Fill in this information to identify your case:

Debtor 1 __CHARLES EVEAN SELMAN__
First Name    Middle Name    Last Name

Debtor 2 _____
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: Western District of North Carolina

Case number  25-30194
(if known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?**  Lendmark Financial Services, LLC
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed    $ 14,493.62
   To be paid under the reaffirmation agreement    $ 15,222.53
   $ 440.18 per month for _____ months (if fixed interest rate)
   $440.18 to be paid beginning JUNE 7, 2025 Until paid in full with the full balance including arrears, late fees, and or costs to be paid by the maturity date of the loan.

3. **What is the Annual Percentage Rate (APR) of interest?** (See Bankruptcy Code § 524(k)(3)(E).)
   Before the bankruptcy case was filed    24.99 %
   Under the reaffirmation agreement    15.00 %  ☑ Fixed rate
   ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☑ No
   ☐ Yes. Describe the collateral. 2025 DERETTE V100
   Current market value    $ 28,500.00

5. **Does the creditor assert that the debt is nondischargeable?**
   ☑ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. **Using information from Schedule I: Your Income** (Official Form 106I) and **Schedule J: Your Expenses** (Official Form 106J), fill in the amounts.

   | | Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
   |---|---|---|
   | 6a. Combined monthly income from line 12 of Schedule I | $ 14625.14 | 6e. Monthly income from all sources after payroll deductions  $ 14625.14 |
   | 6b. Monthly expenses from line 22c of Schedule J | – $ 14253.70 | 6f. Monthly expenses  – $ 14253.70 |
   | 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | – $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses  – $ 0 |
   | 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ 371.44 | 6h. Present net monthly income  $ 371.44  Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. |

Official Form 427    Cover Sheet for Reaffirmation Agreement    page 1

Debtor 1  **CHARLES EVAN SELMAN**  Case number (if known) **25-30194**
First Name   Middle Name   Last Name

| 7. Are the income amounts on lines 6a and 6e different? | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____ |
|---|---|
| 8. Are the expense amounts on lines 6b and 6f different? | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☑ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is *Yes*, the debtor must sign here.<br><br>If all the answers on lines 7-9 are *No*, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _____    ✗ _____<br>Signature of Debtor 1                     Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☑ Yes |

### Part 2:  Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ _____   Date **04/09/2025**
Signature                                                                                  MM / DD / YYYY

**Lisa Paris**
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

Form 2400A (12/15)

> Check one.
> ☐ Presumption of Undue Hardship
> ☑ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Western District of North Carolina

In re CHARLES EVAN SELMAN ,
*Debtor*

Case No. 25-30194

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** LENDMARK FINANCIAL SERVICES LLC

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: PMSI

*For example, auto loan*

B. ***AMOUNT REAFFIRMED***:    $  15,222.53

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 04/09/2025, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 15.0000 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate      ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                                                          Page 2

D. **Reaffirmation Agreement Repayment Terms** *(check and complete one)*:

☐  $_____ per month for _____ months starting on_____.

☑  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$440.18 to be paid on the 7TH of each month beginning JUNE 7, 2025 until paid in full with the full balance including arrears, late fees and or costs, to be paid by the maturity date of the loan.

E. Describe the collateral, if any, securing the debt:

Description:            2025 DERETTE V1000
Current Market Value    $                28,500.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral?        $_____

☑ No. What was the amount of the original loan?              $        26,410.80

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 14,493.62 | $ 15,222.53 |
| Annual Percentage Rate | 24.9900 % | 15.0000 % |
| Monthly Payment | $ 440.18 | $ 440.18 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.  ☑ Yes    ☐ No

B. Is the creditor a credit union?

Check one.  ☐ Yes    ☑ No

Form 2400A, Reaffirmation Documents                                                                    Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

  1. Your present monthly income and expenses are:

     a. Monthly income from all sources after payroll deductions
        (take-home pay plus any other income)                              $ 14625.14

     b. Monthly expenses (including all reaffirmed debts except
        this one)                                                          $ 13813.52

     c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ 811.62

     d. Amount of monthly payment required for this reaffirmed debt        $ 440.18

     *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

  2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

     Check one of the two statements below, if applicable:

     [x] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

     [ ] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:



     Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

     [ ] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

Also, check the box at the top of page one that says "No Presumption of Undue Hardship."

Form 2400A, Reaffirmation Documents                                                                 Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4-12-25   Signature X _____
                                    Debtor

Date _____   Signature _____
                                    Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Lendmark Financial Services, LLC    2118 Usher Street NW Covington, GA 30014
                 Print Name                              Address

Lisa Paris                                    X _____    04/09/2025
Print Name of Representative                     Signature              Date

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 4/15/25   Signature of Debtor's Attorney _____

Print Name of Debtor's Attorney  Jeffrey G. Dalrymple

Form 2400A, Reaffirmation Documents                                                                                                  Page 5

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.    DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay.  Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral.  Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt.  If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.  However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later.  To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled).  Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Form 2400A, Reaffirmation Documents                                                                                                  Page 6

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

Form 2400A, Reaffirmation Documents

Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# OH RETAIL INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

| BUYER(S) | SELLER |
|---|---|
| NAME: Charles Selman | NAME: GSA Equipment |
| NAME: | BUSINESS ADDRESS: 50 31st ST SW |
| ADDRESS: 4318 Sunrise Dr | CITY: NORTON   STATE: OH   ZIP: 44203-000 |
| CITY: Kannapolis   STATE: NC   ZIP: 28083 | SALES: |

| DESCRIPTION OF GOODS OR SERVICES | MODEL NUMBER | SERIAL NUMBER | CASH PRICE INCLUDING TAXES AND SERVICE CONTRACT |
|---|---|---|---|
| Derette V1000 | | | $15,000.00 |

| CONTRACT DATE | ESTIMATED DELIVERY DATE IF OTHER THAN CONTRACT DATE | FINANCE CHARGE BEGINS TO ACCRUE ON THE LATER OF THE DATE THE GOODS OR SERVICES ARE DELIVERED OR THE CONTRACT DATE | FOR ASSIGNEE USE, DO NOT WRITE IN THESE SPACES |
|---|---|---|---|
| 2/1/25 | N/A | | PURCHASE DATE: 2/7/2025   ACCOUNT NUMBER: |

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of Buyer's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Buyer. | AMOUNT FINANCED The amount of credit provided to Buyer or on Buyer's behalf. | TOTAL OF PAYMENTS The amount Buyer will have paid after Buyer has made all payments as scheduled. | TOTAL SALE PRICE The total cost of Buyer's purchase on credit, including Buyer's down payment of $ 0.00 |
|---|---|---|---|---|
| 24.989 % | $ 11,410.80 | $ 15,000.00 | $ 26,410.80 | $ 26,410.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $440.18 | Monthly Beginning 30 days after delivery of goods or services* |

**Security:** Buyer is giving security interest in the goods being purchased.
**Late Charge:** If Seller does not receive Buyer's payment within 10 days of the date it is due, Buyer agrees to pay a late charge equal to 10% of the scheduled payment or $25.00, whichever is lesser.
**Prepayment:** If Buyer pays off early, Buyer may be entitled to a refund of part of the finance charge.
**Additional Information:** See this Contract in its entirety for any additional information about nonpayment, default, any required repayment in full before the scheduled due date, and prepayment refunds and penalties.
*If the first payment is due on the last day of the month all monthly payments will be due on the last day of each respective month.   "e" means estimate

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price..........................$ 15,000.00
(including taxes and service contract, if any)
2. a. Cash Down Payment $ 0.00
   b. Trade-in $ 0.00
   Total Down Payment (a+b)..............$ 0.00
3. Unpaid Balance of Cash Price (1-2)......$ 15,000.00
4. Unpaid Balance on Prior Account.........$ 0.00

5. Amounts Paid to others on Buyer's behalf:
   a. To Public Officials
      Filing Fees     $ 0.00
      Doc. Stamps    $ 0.00
                     $ 0.00
      Total to Public Officials.............$ 0.00
   b. To: _____  $ 0.00
      For: _____

   c. To: _____  $ 0.00
      For: _____
6. Amount Financed (3+4+5)..............$ 15,000.00

Prepaid Finance Charge $ 0.00

## RETAIL INSTALLMENT SALES CONTRACT

**DEFINITIONS:** The word "Buyer" means each and all those who sign below as Buyers and their heirs, executors, administrators, successors and assigns. The word "Seller" means the Seller shown below, and if this Contract is assigned, its successors and assigns and any other holder of this Contract. "Contract" means this Retail Installment Sales Contract and Security Agreement signed by the Buyer and Seller.
**AGREEMENT TO PURCHASE:** Buyer has been advised of the amount of the Cash Price and Total Sale Price, respectively, and Buyer elects to purchase the goods or services on credit for the Total Sale Price specified herein. Seller hereby sells and Buyer hereby purchases the goods or services described and defined above. Seller hereby acknowledges receipt of the Total Down Payment, if any, shown above.
**BUYER'S PROMISE TO PAY:** Buyer promises to pay to Seller, or to whomever Seller may assign this Contract, the amount shown herein as the Total of Payments over time in accordance with the payment schedule shown above.
**SAME AS CASH OPTION:** ☐ If this box is checked and this section is signed or initialed below by the Seller and Buyer, this contract contains a "Same as Cash" option. If you pay the entire Amount Financed (Line 6) within 0 days, no finance charges will be assessed, and any insurance premiums will be rebated in accordance with the terms of the policy. The "Same as Cash" period begins the later of 1) the date this Contract is signed; or 2) the date the goods or services are delivered. The "Same as Cash" option is void unless you pay each regular monthly payment when due according to the payment schedule during the "Same as Cash" period. If the Agreement is not prepaid during the "Same as Cash" period, finance charges will be assessed during the "Same as Cash" period.

Seller: _____   Buyer: _____
**NOTICE TO THE BUYER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.**
☐ If checked, the following notice applies: **BUYER'S RIGHT TO CANCEL:** YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.
BUYER ACKNOWLEDGES READING THIS CONTRACT AND THE ADDITIONAL PROVISIONS ON PAGES 2 AND 3 WHICH ARE A PART OF THIS CONTRACT AND RECEIVING A COMPLETED, LEGIBLE EXECUTED COPY OF THIS CONTRACT.

SELLER: _____   BUYER: _____
                                      Charles Selman
BY: Sales Mgr.           BUYER: _____

## ADDITIONAL PROVISIONS

**PAYMENT APPLICATION:** Each payment will be applied first to late charges, then to the unpaid balance of the Total of Payments, and then to any other charges due hereunder.

**INTEREST AFTER MATURITY:** Interest will accrue after maturity at the ANNUAL PERCENTAGE RATE shown on page 1, payable at Seller's business address unless another place is designated in writing by Seller, its successors or assigns.

**CHARGE FOR LATE PAYMENT:** If Seller does not receive Buyer's payment within 10 days of the date it is due, Buyer agrees to pay a late charge equal to 10% of the scheduled payment or $25.00, whichever is lesser.

**DISHONORED CHECK FEE:** In the event Buyer makes a payment by check, instrument or other authorization that is not paid or is dishonored by the depository institution on which it is drawn, then Buyer agrees to pay Seller a dishonored check fee in the amount of $20.00.

**PREPAYMENT:** Buyer can prepay any amounts due under this Contract at any time without a prepayment penalty. If Buyer prepays this Contract in full, Seller will refund the UNEARNED FINANCE CHARGE, less an acquisition cost of $10.00, figured by the Rule of 78s method. No refund credits will be for less than $1.00.

**EVENTS OF DEFAULT:** Time is of the essence of this Contract. Buyer will be in default if: 1) Buyer does not make a payment on time; or 2) Buyer breaks one of the promises under this Contract; or 3) Buyer made any false or misleading statement on Buyer's application; or 4) Seller, in good faith, believes that buyer can not, will not, pay or perform the obligations agreed to in this contract. In the event of default, Seller may pursue any and all rights and remedies given it under applicable law which rights and remedies shall be cumulative and not alternative. When applicable law requires that reasonable notice be given, 10 days shall be deemed reasonable notice.

**REMEDIES ON DEFAULT:** Except for a default in making payments on time which must continue for 30 days prior to Seller being able to accelerate the unpaid balance, Seller may require immediate payment of the unpaid balance Buyer owes Seller. If Seller does so, that unpaid portion will be reduced by the unearned Finance Charge computed as if Buyer had prepaid in full. The unpaid portion will accrue interest at the ANNUAL PERCENTAGE shown on page 1 hereof. On any default, Seller will have the remedies of a secured party under the Uniform Commercial Code ("UCC"). Buyer is liable for any deficiency following repossession, notice and sale of the collateral. In the event Seller obtains a judgment against Buyer, the judgment shall bear interest at the Annual Percentage Rate shown on page 1.

**SECURITY INTEREST:** To secure payment and performance of this Contract, Buyer agrees that, until the Total of Payments has been paid in full, Buyer grants to Seller a security interest in the Goods under the UCC and title to the Goods purchased by Buyer shall remain in Seller as security for Buyer's obligation hereunder and under any subsequent retail installment contract purchase added to or consolidated with this Contract at Buyer's request. The security interest granted by Buyer to Seller is subject to the terms of the Security Agreement set forth below.

**SELLER LOSS PAYEE:** Seller shall be named as loss payee under all insurance for which charges are made herein or which covers the Goods sold hereunder as security for Buyer's obligation hereunder.

**COLLECTION COSTS:** Buyer agrees to pay all collection costs in the event of Buyer's default, including but not limited to repossession, storage, repair and resale expenses. In addition, if this Contract is referred to an attorney (not a salaried employee of Seller), Buyer will be liable for payment of reasonable attorney's fees and for court costs to the extent permitted by law.

**PURPOSE OF PURCHASE:** Buyer represents and agrees that the Goods described herein are purchased for family, personal or household purposes and will be placed and shall remain at the address set forth as Buyer's address, that no transfer, renewal, extension or assignment of this Contract or any interest hereunder, or loss, damage, injury or destruction of said Goods shall release Buyer from the obligations hereunder, that Buyer will not sell or offer to sell or otherwise transfer or encumber or permit any liens or encumbrances of any kind or character to accrue against said Goods or any interest therein without the prior written consent of Seller. Buyer agrees to keep said Goods in good condition and keep said Goods insured against loss by fire or theft.

**ASSIGNMENT:** Seller may assign this Contract and in the event of such assignment, Buyer shall perform all promises herein contained to such Assignee as the owner hereof.

**DELIVERY OF GOODS:** If delivery of the Goods is not made at the time of the execution of this Contract, the identifying number or marks of the Goods or similar information may be inserted by the Seller in the Seller's copy of the Contract after it has been signed by the Buyer.

**DELAY IN EXERCISING RIGHTS:** No delay or omission to exercise any right, power or remedy accruing to Seller upon breach or default by Buyer, or acceptance of any payment or partial payment after maturity shall impair any such right, power or remedy, nor be construed as a waiver of such breach or default, or of any similar breach or default thereafter occurring. Seller can delay enforcing any of its rights without losing them.

**NOTICES:** All notices required to be given to Buyer shall be properly given if mailed to Buyer's last known address on record.

**ENTIRE AGREEMENT:** This Contract and any arbitration agreement entered into between Buyer and any holder of this Contract constitute the entire agreement between the parties. No express or implied warranties and no representations, promises or statements have been made by Seller, its agents or employees unless endorsed hereon in writing. No waivers or modifications shall be valid unless written upon or attached to this Contract. All of the terms and conditions of this Contract shall apply to and be binding upon said Buyer, his heirs, personal representatives, successors, and assigns and shall inure to the benefit of said Seller, its successors and assigns.

**GOVERNING LAW:** The laws of the State of Ohio shall be applicable to this transaction.

**SEVERABILITY:** Any term or provision contained in this Contract which is prohibited by law will be ineffective to the extent of such prohibition and will not invalidate the other provisions.

**PROPERTY INSURANCE:** Buyer shall keep the Goods subject to this Contract insured against physical damage naming Seller as loss payee under such insurance policy for the duration of the Contract with a company acceptable to Seller. If Buyer fails to keep the Goods so insured, Seller may, but shall not be obligated to, purchase insurance covering the Goods against loss or damage, in such form and amount and with such insurer as shall be satisfactory to Seller, and Buyer agrees to pay the premium therefore upon demand, and such payment shall be secured by this Contract. The proceeds of any insurance, whether paid by reason of loss, injuries, return premiums or otherwise, shall be applied toward the replacement of the Goods or payment of this obligation at the option of Seller. Buyer expressly directs any such insurer to make any such payment directly to the holder of this Contract, and hereby appoints Seller as Buyer's attorney-in-fact to endorse any draft. In the event the insurance proceeds do not cover the amounts Buyer owes to Seller, Buyer will be responsible for paying the difference.

**CALLS AND MESSAGES:** Buyer understands and agrees that Seller, including Seller's affiliates, assigns, service providers and agents (collectively, the "Messaging Parties"), may use automated telephone dialing, text messaging systems and electronic mail to provide messages to Buyer or contact Buyer about scheduled payments, missed payments and with other important information regarding this Contract or Buyer's relationship with the Messaging Parties. Telephone calls may include a pre-recorded message and may be played by a machine automatically when the telephone is answered, whether answered by Buyer, someone else or a voice mail or answering machine. Buyer authorizes the Messaging Parties to call or send a text message to any telephone number Buyer has given the Messaging Parties or Buyer gives to a Messaging Party in the future, including telephone number(s) set forth in the Application for Credit submitted in connection with this Contract. Buyer also gives the Messaging Parties permission to communicate such information to Buyer by e-mail. Buyer understands that, when Buyer receives such calls, texts or e-mails, Buyer may incur a charge from the company that provides Buyer with telecommunications, wireless and/or internet services. Buyer agrees that the Messaging Parties will not be liable to Buyer for any fees, inconvenience, annoyance or loss of privacy in connection with such calls or e-mails. Buyer understands that anyone with access to Buyer's telephone, answering machine or email account may listen to or read the messages, notwithstanding the Messaging Parties efforts to communicate only with Buyer. This authorization is part of our bargain concerning this purchase on credit and this Contract and Seller does not intend it to be revocable. However, to the extent Seller is required by applicable law to allow Buyer to revoke Buyer's consent to these automatic reminders, I may do so by calling 1-866-413-8340 or submitting a request at www.lendmarkfinancial.com under the Contact Us tab.

## SECURITY AGREEMENT

Buyer hereby grants to the Seller a Security Interest under the Uniform Commercial Code in the Goods or other property described in the Retail Installment Sales Contract (hereinafter referred to as the "Goods"). A security interest is also taken in the proceeds of any money paid for damages to said Goods by an insurance company. Said money, at Seller's option, may be applied toward payment of this indebtedness.

Said security interest shall remain in Seller until the Total of Payments and all other indebtedness which Buyer may now or hereafter owe to Seller shall have been paid in full unless specifically released by Seller.

In the event of Buyer's default in the performance of any of Buyer's obligations under the Retail Installment Sales Contract or this Security Agreement, Seller or its representatives may enter upon Buyer's premises and take possession of the Goods. Within 5 days of taking possession of the Goods, Seller must provide Buyer with Notice of Buyer's Right to Cure and allow Buyer to cure the default and redeem the Goods within 20 days from the date Seller took possession of the Goods or 15 days from the date Buyer received such Notice. If after expiration of the Right to Cure period, Buyer does not cure and redeem the Goods, Seller may sell the same either at public or private sale, according to the provisions of the Uniform Commercial Code, with or without advertisement on such terms as the Seller may deem best, and upon some circumstances to bid and purchase at such sale.

It is understood and agreed that the subject matter of this Contract shall be considered to be personal property regardless of the use to which it is put, or the manner in which it may be attached or affixed to any real property.

Buyer agrees to execute and deliver such documents as Seller may request to perfect as against third parties any rights created hereunder. Buyer hereby authorizes Seller to record said documents at such time and in such places as Seller may elect.

The failure of Seller, upon knowledge of any default or violation hereof by Buyer, to enforce the rights or remedies herein given or conferred by law, shall not be construed as a waiver of any provision hereof or any right or remedy of Seller.

Buyer agrees that Seller may at any time, sell, transfer or assign this Contract or any right hereunder and that all terms herein set forth for the benefit of the Seller shall inure to the benefit and operate in favor of such Successor of Assignee.

Buyer represents that Buyer is of lawful age and has full legal capacity to contract, and Buyer has read this Contract, and it contains the entire agreement of the parties.

**WARRANTIES: NO WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHER WARRANTIES, EXPRESS OR IMPLIED, REPRESENTATIONS, PROMISES OR STATEMENTS AS TO THE CONDITION OR FITNESS OF THE PROPERTY HAVE BEEN MADE BY SELLER UNLESS COVERED BY A SEPARATE WRITTEN STATEMENT DELIVERED TO BUYER.**

---

**NOTICE: ANY HOLDER OF THIS AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES THAT THE BUYER COULD ASSERT AGAINST THE SELLER OF GOOD OR SERVICES OBTAINED BY THIS AGREEMENT OR WITH THE PROCEEDS OF THIS AGREEMENT. RECOVERY UNDER THIS AGREEMENT BY THE BUYER MAY NOT EXCEED AMOUNT PAID BY THE BUYER UNDER THE AGREEMENT.**

---

## SELLER'S ASSIGNMENT

Date: 2-1-25

For value received, the undersigned does hereby sell, assign and transfer to **LENDMARK FINANCIAL SERVICES, LLC**, hereinafter referred to as Assignee all of its, or their title and interest in and to the within RETAIL INSTALLMENT SALES CONTRACT, hereinafter referred to as Contract, and authorizes said Assignee to collect and discharge the same. The undersigned warrants that said Contract is genuine and that all statements and facts contained therein are true; that the parties to said Contract have the capacity to contract; that Seller had good, unencumbered title to the Goods described in the Contract when sold to Buyer; that the Total of Payments set out herein represents partial consideration for a time sale of merchandise which has been delivered. If any warranty shall be untrue, the undersigned agrees to repurchase the Contract for the unpaid balance due thereon plus all costs and expenses incurred by the Assignee upon Assignee's demand.

In addition, Seller warrants that the application for extension of credit to Buyer was taken in compliance with the Federal Equal Credit Opportunity Act and Regulation B. Seller further warrants that the Contract fully complies with the Federal Consumer Credit Protection Act, Regulation Z, Ohio Rev. Code §1317.01 et seq., and, if applicable, the Federal Trade Commission Regulation Rule, Title 16. Seller shall forever hold Assignee harmless from any actual or alleged violations of the aforementioned statutes or regulations. In the event the parties hereto have previously entered into a Master Dealer Agreement, the warranties and representations contained herein shall compliment, and be cumulative with, those contained in said Master Dealer Agreement.

### WITHOUT RECOURSE

The foregoing assignment is made without recourse except as to the warranties hereinbefore expressed, and except as to any warranties and rights under the Master Dealer Agreement heretofore signed by the Seller and Assignee.

SELLER: _[signature]_

By: _[signature]_ Sales Mgr        Title

### WITH RECOURSE

The undersigned guaranteed unconditionally the payment and prompt and full performance of all terms and conditions of the within Retail Installment Sales Contract.

SELLER: _____

By: _____        Title

(CORPORATE SEAL)